## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| Edwards Moving & Rigging, Inc., <br><br> Plaintiff, <br><br> v. <br><br> William C. Moore and Beyel Brothers, Inc., <br><br> Defendants. | Case No.: _____ |

### Verified Complaint for Injunctive and Other Relief

For its Verified Complaint, Plaintiff Edwards Moving & Rigging, Inc. ("Edwards") states as follows:

### Introductory Statement

1. This is an action to enforce Edwards's contractual and common law rights. As a condition of hiring Moore, Edwards required that Moore enter into the attached agreement, in which Moore promised that for a two-year period after leaving Edwards, he would not work for any entity rendering services that Edwards renders in any market where Edwards operates.

2. After working for Edwards for approximately fourteen years and learning intimate details of Edwards's pricing strategy, work staging, and competitive positioning, Moore abruptly quit his Edwards position and immediately went to work for Beyel Brothers, a direct competitor of Edwards in

1

Florida. Beyel Brothers is well-aware both of Moore's non-compete agreement with Edwards and that Moore necessarily would bring with him keen insight into Edwards's bidding process, work staging, and pricing strategy—information of considerable competitive value to Beyel Brothers.

3. In this action, Edwards seeks an order holding Moore to his promises to Edwards and barring Beyel Brothers from employing Moore for two years.

## Parties

4. Plaintiff Edwards is a Kentucky corporation with its principal place of business in Shelbyville, Kentucky.

5. Defendant William Moore is a Florida citizen.

6. Defendant Beyel Brothers, Inc. is a Florida corporation with its principal place of business in Florida.

## Jurisdiction and Venue

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs. In this suit, Edwards seeks among other things to enjoin for a period of two years the employment of an individual being paid a six-figure annual salary. It also seeks its attorneys' fees under a contract indemnity provision, and those fees are virtually certain to exceed $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over defendants because they are based in Florida and their activities in Florida give rise to the claims here. This

District and Division are a proper venue because a substantial portion of the events giving rise to the claims occurred here.

**Factual Allegations**

9. Founded in 1961, Edwards has grown to be a leader in the complex, large-scale industry of transporting, moving, and lifting of heavy and over-sized components and equipment. Edwards performs heavy haul and rigging across multiple industries including power plants, nuclear facilities, petrochemical, automotive, construction, and rail. For instance, Edwards recently received the Hauling Job of the Year Award from the Specialized Carriers & Rigging Association for a project that involved the transport of three of the largest-ever fully assembled turbines from a manufacturing facility in New York to a new combined cycle power plant in Pennsylvania. The final gross weight of the configuration was over 900,000 pounds.

10. Edwards has grown geographically into multiple markets, including the Florida market. Edwards has maintained a physical presence in Florida for over a decade and has worked on Florida projects even longer, including in the Tampa area. Edwards actively competes for and bids on projects throughout Florida.

11. Edwards first hired defendant Moore as a rigger in 2008. Prior to his work for Edwards, Moore had no experience in the specialized heavy moving and rigging business. Since 2008, he has worked at Edwards except for a few brief gaps in 2013 and 2014. Until resigning in May 2023, his most recent work gap occurred when he briefly resigned from the Company in late 2021, only to be re-hired in

early 2022, at which point he entered into the attached Agreement. At Moore's request, Edwards reassigned Moore from South Carolina to the Florida market in late 2022.

12. Moore most recently worked as a Superintendent for Edwards and was paid a six-figure salary. He was not a "low-level" or "rank and file" employee by any means. Indeed, Superintendents at Edwards are among the most highly compensated employees, consistent with their value to the Company, their intimate knowledge of Company operations, and their job responsibilities. Superintendents like Moore work closely with the sales team and Project Managers to review jobs and bids. They work closely to find efficient ways to execute jobs to make Edwards more competitive. They perform route surveys for transport feasibility, work with engineering to develop transport and execution plans, and they attend site visits and site walkdowns. Moore also has had responsibility for maintaining an Edwards yard and managing its crew and interviewing and hiring new crew members.

13. In exchange for lucrative employment and access to valuable competitive information and contacts, Moore agreed that for a period of two years after leaving Edwards, he would not work for any entity that competes with Edwards. A copy of his non-compete agreement is attached as Exhibit A and is incorporated by reference. In particular, as a condition of his employment, Moore promised Edwards that for a period of two years following the termination of his Edwards employment, he would not "enter into the employ of … any entity …

4

engaged in rendering any service being … rendered by" Edwards in Edwards's markets. See Exhibit A at ¶ 1.A.(1).

14. Moore also expressly agreed that the scope and duration of his non-compete agreement were reasonable and that injunctive relief and specific performance would be appropriate remedies for any breach. In addition, Moore agreed to indemnify Edwards for its legal fees incurred in connection with any breach on his part.

15. After a trial, this Court recently found the same agreement at issue here to be valid and enforceable, applying it to enjoin a former Edwards salesman from working for another crane company, even in a non-sales position. *Edwards Moving & Rigging, Inc. v. Jenkins*, No. 8:19-cv-1004-T-36SPF, 2020 WL 7707025 (M.D. Fla. Dec. 29, 2020). Another Court, also applying Kentucky law as required by the Agreement determined that the Agreement was valid and enforceable, concluding that "a non-compete clause made for the sole purpose of protection from ordinary competition is enforceable under Kentucky law 'unless very serious inequities would result.'" *Edwards Moving & Rigging, Inc. v. Lack*, No. 2:14-CV-02100-JPM, 2015 WL 3891953, at *5 (W.D. Tenn. June 24, 2015) (citing *Hall v. Willard & Woolsey, P. S. C.*, 471 S.W.2d 316, 318 (Ky. 1971)).

16. On June 1, 2023, Edwards learned that Moore had accepted a position with defendant Beyel Brothers, Inc. as "Corporate Heavy Haul Manager." Beyel Brothers renders services in Florida that Edwards also renders in Florida, and Beyel Brothers and Edwards compete for projects in Florida. Among the services

5

that both Edwards and Beyel Brothers render are: (a) lifting and moving large, heavy objects varying distances with cranes and with equipment other than cranes; (b) hauling large, heavy objects various distances with equipment other than cranes; and (c) rigging. Moore assisted Edwards in rendering those services, and now he is assisting Beyel Brothers in rendering those services, in competition with Edwards.

17. Beyel Brothers supplies cranes and heavy equipment services and includes a "heavy haul" division. Like Edwards, Beyel Brothers identifies its worksites as "power plants, construction, ships, launch pads or theme parks," and "offer[s] civil engineering, logistics, and project management along with the heavy-duty tools" necessary to move heavy and oversized objects an inch or a thousand miles.

18. Edwards and Beyel Brothers have in fact directly competed for projects in the state of Florida during the past year. Edwards views Beyel Brothers as its principal competitor, and Moore is well aware of that.

19. Upon learning of Moore's misconduct, Edwards advised Beyel Brothers of Moore's non-compete agreement, and followed with correspondence to both Moore and Beyel Brothers demanding that they cease and desist. Beyel Brothers did not respond. Moore claimed that his new position at Beyel Brothers was sufficiently different than this position at Edwards that his restrictive covenants could not be enforced against him.

**Count I –**

**Specific Performance and Breach of Contract Against Moore**

20. Edwards realleges the foregoing paragraphs.

21. Edwards and Moore have a valid and enforceable contract, attached as Exhibit A.

22. Edwards has performed its obligations under the contract.

23. In breach, Moore has failed to perform his promise that he would not work for any entity rendering any service that Edwards renders at the time of his termination.

24. As Moore expressly acknowledged, money damages are an inadequate remedy for his misconduct.

25. Accordingly, Edwards requests that the Court order Moore's performance of the agreement and enjoin his work for Beyel Brothers for a period of two years.

**Count II –**

**Tortious Interference Against Beyel Brothers**

26. Edwards restates and incorporates herein by reference the allegations above.

27. Beyel Brothers had no lawful privilege or excuse for engaging in the unlawful conduct described above.

28. By inducing Moore's breach, Beyel Brothers tortiously interfered with Edwards' contractual rights.

29.     Defendants' unlawful conduct will cause Edwards to suffer immediate and irreparable injury. Specifically, Edwards has lost and will continue to lose certain competitive advantages and will sustain injury to its goodwill and reputation. Edwards will continue suffering such irreparable injury unless the Court immediately enjoins Defendants from such unlawful activities. Edwards has no adequate remedy at law or other means to address this injury, other than the Court immediately enjoining Defendants from such unlawful activities.

## Prayer for Relief

Edwards requests the following remedies:

A.      An injunction or order of specific performance directing that Moore cease his conduct in violation of this agreement with Edwards.

B.      An injunction directing Beyel Brothers to cease its employment of Moore.

C.      An award of its legal fees and costs.

D.      Such other relief as the Court deems proper, including money damages however inadequate, in the event the Court declines injunctive relief.

Respectfully submitted,

|  |  |
|---|---|
| Clark C. Johnson (*pro hac vice* forthcoming)<br>Email:<br>cjohnson@kaplanjohnsonlaw.com<br>KAPLAN JOHNSON ABATE & BIRD LLP<br>710 West Main Street | /s/Brett J. Preston<br>Brett Preston (FBN 603716)<br>Email:<br>brett.henderson@hwhlaw.com<br>Dave Luikart (FBN 20179)<br>Email: dave.luikart@hwhlaw.com<br>HILL WARD & HENDERSON, P.A.<br>101 East Kennedy Blvd. |


Louisville, Kentucky 40202
Telephone:  (502) 416-1630
Facsimile:   (502) 540-8282

*Co-Counsel for Edwards Moving & Rigging, Inc.*

Tampa, Florida 33602
Telephone:  (813) 227-8419
Facsimile:    (813) 221-2900

*Co-Counsel for Edwards Moving & Rigging, Inc.*

## VERIFICATION

I, Jennifer Schuster, declare and state as follows:

1. I am the President and COO of Edwards Moving & Rigging, Inc. ("Edwards"). I am authorized to make this verification on behalf of Edwards, the plaintiff in this matter.

2. I have reviewed the Verified Complaint in this action and the Exhibit attached thereto.

3. The allegations of the Verified Complaint are true and correct to the best of my personal knowledge, information, and belief.

_____
Jennifer Schuster

18327724v1